[No. 8230.  *En Banc.*  January 17, 1910.]

THE STATE OF WASHINGTON, *on the Relation of J. L. Harper et al., Plaintiff,* v. I. M. HOWELL, *as Secretary of State, Respondent.*[1]

CORPORATIONS—ORGANIZATION—RIGHT TO CORPORATE NAME — FORFEITURE—MANDAMUS. Mandamus will not issue to require the secretary of state to strike the name of a corporation from the records for nonpayment of license fees, pursuant to Laws 1907, p. 272, on the application of a new corporation that sought to take the same name, after the first corporation's name had been stricken by mistake pending negotiations for the adjustment of the first corporation's delinquent license fees, which it was making an honest effort to ascertain and pay (Gose, Chadwick, and Fullerton, JJ., dissenting).

Application filed in the supreme court August 20, 1909, for a writ of mandamus to the secretary of state. Denied.

*Troy & Sturdevant,* for relators.

*The Attorney General,* for respondent.

PARKER, J.—This is an original application for a writ of mandamus to require the secretary of state to strike from the records of his office the name of the Republic Consolidated Gold Mining Company, a corporation, and give to relators and to a new corporation attempted to be organized by them, the same name, and issue certificate of incorporation and license accordingly.

The statutes applicable to the controversy are the following: Laws of 1903, page 124, provide:

"No corporation shall take the name of a corporation theretofore [heretofore] organized under the laws of this state, nor of any foreign corporation having complied with the laws of this state, nor one so nearly resembling the name of such other corporation as to be misleading. The secretary of state shall refuse to file said articles of incorporation

[1]Reported in 106 Pac. 470.

of any association or corporation violating the provisions of this act."

Laws of 1907, page 272, provide:

"It shall be the duty of the secretary of state to strike from the records of his office the names of all incorporations which have neglected for a period of two years to pay their annual license fee; and any corporation thereafter organized may take and shall have the exclusive right to use the corporate name of any corporation so stricken from the records."

The facts shown by the record are as follows: In March, 1899, the Republic Consolidated Gold Mining Company filed its articles of incorporation with the secretary of state and became incorporated under the laws of this state. On June 8, 1909, it was in arrears on account of license fees for the years 1906, 1907, 1908, and 1909, when W. G. C. Lauskail, for it, forwarded to respondent the sum of $47.50 in payment of its license fees, and requested that if said sum was not sufficient to pay the fees then due, that he be notified of the amount due. On June 16, 1909, respondent acknowledged receipt of the $47.50 and notified Lauskail by letter that there was due, including the license fee for 1910, an additional sum of $27.50, which letter was not received by Lauskail. On June 30, 1909, Lauskail again wrote to respondent concerning the license fees. On July 9, 1909, respondent answered stating that after July 1, the penalty of $2.50 had accrued and it would be necessary to pay an additional sum of $30 instead of $27.50. On August 7, 1909, the sum of $30 was forwarded to respondent in full payment of all fees and penalties due from the corporation.

In the meantime the following facts occurred, as shown by the record upon which relators base their right to the writ: On July 1, 1909, while the matter of the adjustment of delinquent fees of the corporation was pending, the name of the company was, as alleged by the respondent, through mistake and oversight, stricken from the rolls in his office under the law of 1907 above quoted. On July 1, 1909, before the

mistake of striking the corporation's name from the rolls was noticed, the relators, seeking to organize a new corporation of the same name, filed articles of incorporation and paid the necessary fees into the office of respondent; and before the issuing of certificate of incorporation and license for the proposed new corporation, the mistake of striking the name of the old corporation from the record was discovered, and thereupon respondent refused to issue certificates for the new corporation, for the reason there was another corporation of the same name.

Learned counsel for relators contend that, in view of the fact that they had done all acts necessary to entitle them to incorporate in the name proposed, at a time when the old corporation was in default and after its name had been physically stricken from the rolls, their right to incorporate became fixed and vested. There would be force in this argument were it not for the fact that it is apparent the question of the adjustment of the delinquent fees by the old company was then pending and an honest effort being made by the old company to ascertain and pay the amount due. It is true that adjustment was not consummated until after relators had filed their articles and paid their fees, but it had been commenced before the time for striking the name of the old company from the records had arrived and before relators had taken any steps looking to the incorporation of their company, and had been carried on in an apparent honest effort, and to final consummation.

There is another matter, not mentioned in briefs of counsel, yet we deem it worthy of notice. By § 6, p. 272, Laws of 1907, the annual license fee of corporations of this kind is fixed at fifteen dollars per year payable on July 1, so that when respondent accepted from Lauskail, for the company, the $47.50 and notified him that $27.50 would pay the balance due including the fee for 1910, which would be due after July 1, it seems plain that there was not two years license fees ($30) wholly unpaid, nor was it wholly unpaid when relators

acquired whatever rights they possess, because taking the $15 due for 1910 from the $27.50 due there was evidently only $12.50 of 1909, unpaid. Whether or not it was strictly regular for respondent to receive a fraction of the 1909 license fee, we need not now inquire. It is evident it was received in the best of faith.

The method of depriving a corporation of its name provided by this law, is summary and without notice; and we do not think a corporation should be held to have incurred such a serious loss, by such a summary method, until its failure and neglect is shown beyond all question. We do not think there is such a showing here against this corporation. The respondent was justified, under the circumstances of this case, in refusing to issue certificates of incorporation and license to the proposed new corporation of the same name. This renders it unnecessary to discuss the constitutional questions presented by counsel.

The writ is denied.

RUDKIN, C. J., DUNBAR, CROW, MOUNT, and MORRIS, JJ., concur.

GOSE, J. (dissenting)—I think the statute requiring the secretary of state to strike the name of a defaulting corporation is mandatory. There is no saving clause in the statute. I therefore dissent.

CHADWICK and FULLERTON, JJ., concur with GOSE, J.